UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

BYRON J. BOUDREAUX, JR.                CIVIL ACTION NO. 6:16-cv-01264

VERSUS                                 JUDGE TRIMBLE

U.S. COMMISSIONER, SOCIAL              MAGISTRATE JUDGE HANNA
SECURITY ADMINISTRATION

## REPORT  AND  RECOMMENDATION

Before the Court is an appeal of the Commissioner's finding of non-disability.

Considering the administrative record, the briefs of the parties, and the applicable

law, it is recommended that the Commissioner's decision be reversed and remanded

for further administrative action.

### ADMINISTRATIVE PROCEEDINGS

The claimant, Byron J. Boudreaux, Jr.,[1] fully exhausted his administrative

remedies before filing this action.  He filed applications for disability insurance

benefits ("DIB") and supplemental security income benefits ("SSI"), alleging

disability starting on December 31, 2013.[2]  His applications were denied.[3]  He

---

[1]      In his briefs, the claimant is referred to as Byron J. Boudreaux, Jr.  In some medical records, however, his first name is shown as "Bryon."

[2]      Rec. Doc. 6-1 at 118, 125.

[3]      Rec. Doc. 6-1 at 61, 71.

requested a hearing,[4] which was held on November 4, 2015 before Administrative Law Judge Lawrence T. Ragona.[5] The ALJ issued a decision on December 29, 2015,[6] concluding that the claimant was not disabled within the meaning of the Social Security Act from the alleged disability onset date through the date of the decision. The claimant asked the Appeals Council to review the decision, but his request was denied.[7] Therefore, the ALJ's decision became the final decision of the Commissioner for the purpose of the Court's review pursuant to 42 U.S.C. § 405(g). The claimant then filed this action, seeking review of the Commissioner's decision.

## SUMMARY OF PERTINENT FACTS

The claimant was born on January 15, 1971;[8] at the time of the ALJ's decision, he was 44 years old. He dropped out of school in the ninth grade but obtained a graduate equivalency diploma.[9] He has relevant work experience as a maintenance worker for a housing authority, a guide/camp manager for a hunting camp, a laborer

---

[4]     Rec. Doc. 6-1 at 86, 89.

[5]     Rec. Doc. 6-1 at 38-60.

[6]     Rec. Doc. 6-1 at 24-31.

[7]     Rec. Doc. 6-1 at 5.

[8]     Rec. Doc. 6-1 at 41, 62, 72, 118, 125.

[9]     Rec. Doc. 6-1 at 44.

for an automobile sale facility, and as a floor boss for a seafood processor.[10]  He alleged that he has been disabled since December 31, 2013[11] due to systolic heart failure, morbid obesity, nomocytic anemia, and diabetes mellitus Type II.[12]

On February 23, 2014, the claimant underwent diagnostic testing at Leonard J. Chabert Medical Center in Houma, Louisiana.[13]  Although the studies were suboptimal, they showed a normal aorta, a short segment of 50% stenosis in the distal left SFA (superficial femoral artery) in the region of the adductor canal, gall stones, and a 2.5 cm left adrenal mass.

On April 2, 2014,[14] the claimant went to the emergency department at Leonard J. Chabert Medical Center in Houma, Louisiana, complaining of scrotal swelling and pain and reporting a history of diabetes.  A CT scan of the abdomen and pelvis showed extensive subcutaneous air in the perineum and ventral to the hips bilaterally, consistent with necrotizing fasciitis of the perineum, scrotum, lower abdomen, and left thigh as well as Fournier's gangrene.  The claimant was admitted to the hospital with diagnoses of Fournier's gangrene and diabetic ketoacidosis.  He remained

---

[10]     Rec. Doc. 6-1 at 45-46,147.

[11]     Rec. Doc. 6-1 at 62, 72, 125.

[12]     Rec. Doc. 6-1 at 62, 72, 145.

[13]     Rec. Doc. 6-1 at 280-282.

[14]     Rec. Doc. 6-1 at 191-197.

hospitalized at Chabert through April 10, 2014.[15]   He underwent a surgical debridement procedure the day he was admitted, and was taken back to the operating room for a "second look" on April 4, 2014.  During the second surgical procedure, an intraoperative transesophageal cardiogram was performed, and the claimant was diagnosed with biventricular systolic dysfunction and a flutter that eventually degenerated to atrial fibrillation with RVR (rapid ventricular rate).  Direct current cardioversion (which converts an abnormal heart rhythm to a normal rhythm) was performed.  One of his testicles was excised.  During this hospitalization, he was in the intensive care unit and diagnosed with sepsis secondary to Fournier's gangrene.  He also underwent a great deal of diagnostic testing.  It was determined that, among other conditions, the claimant had bilateral spondylolysis at the L5 level together with moderate facet degenerative changes noted bilaterally in the lower lumbar spine.  The treatment notes indicate that the claimant would require a plastic surgery evaluation for management of the surgical wound site, and he was discharged to LSU Hospital in New Orleans for that purpose on April 10, 2014.

The claimant was admitted to LSU Hospital on April 10, 2014 and remained hospitalized there until April 24, 2014.[16]   In addition to necrotizing fasciitis and

---

[15]        Rec. Doc. 6-1 at 198-279, 283-306.

[16]        Rec. Doc. 6-1 at 307-473.

gangrene, it was noted that he had hyposmolality and/or hyponatremia (chemical deficiencies in the blood), a vascular disorder of the male genital organs, anemia, hypertension, uncontrolled type II diabetes, atrial fibrillation, morbid obesity, heart disease, and a personal history of noncompliance with medical treatment presenting hazards to his health. While hospitalized, he was intubated for a prolonged time, and he had required cardioversion and IV insulin. The discharge summary indicates that the claimant was transferred to LSU for closure of his wound. Upon arrival at LSU, his wound was found to require further washouts and was not ready for closure. Additionally, his diabetes remained uncontrolled. The internal medicine and cardiology departments were consulted, and debridement surgeries were performed on April 13 and April 16. He was discharged with instructions to follow up in the plastic surgery clinic in two weeks. The treatment notes indicate that he had a past joint replacement, but the joint was not identified. He was diagnosed with normocytic anemia, which was likely caused by blood loss and sepsis. While hospitalized, he was given physical therapy and occupational therapy and visited regularly by a social worker.

On April 25, 2014,[17] the claimant was admitted to Carrington Place, a skilled nursing home, because he needed assistance with bed mobility, transfers, ambulation,

---

[17]     Rec. Doc. 6-1 at 477-499.

and dressing. He was catheterized, was using a walker, and required dressing changes and pain control. The admitting diagnoses were uncontrolled Type II diabetes mellitus, hypertension, Fournier's disease, morbid obesity, anemia, history of atrial fibrillation, status-post debridement of necrotizing fasciitis, status-post abdominal surgery, and status-post joint replacement. He was taking several medications. A wound specialist was consulted, and the claimant was to follow up with the plastic surgery department at the LSU Hospital in two weeks. It is unclear from the record how long the claimant resided at Carrington House.

The claimant followed up at LSU Hospital on May 9, 2014[18] and on May 30, 2014[19] for continued treatment of his wounds. When he returned to LSU Hospital on June 27, 2014,[20] it was noted that his wounds were granulating well and he was almost ready for skin grafting. On August 8, 2014[21] and August 27, 2014,[22] he was continuing to improve. He was seen again at LSU on September 3, 2014.[23]

---

[18]    Rec. Doc. 6-1 at 474-475.

[19]    Rec. Doc. 6-1 at 507-508.

[20]    Rec. Doc. 6-1 at 509-510.

[21]    Rec. Doc. 6-1 at 517-518.

[22]    Rec. Doc. 6-1 at 519-524.

[23]    Rec. Doc. 6-1 at 525-526.

The claimant was admitted to LSU Hospital on September 11, 2014, and he was discharged on September 18, 2014.[24]  During this hospitalization, his wounds were surgically closed with skin grafts and his other medical conditions were evaluated and treated.  He was to avoid strenuous exercise for two weeks following the procedure and to follow up a couple of weeks after discharge from the hospital.

On October 10, 2014, the claimant returned to LSU Hospital.[25]  He complained of having some foot stiffness since surgery but appeared to be neurovascularly intact.

The record contains no evidence that the claimant sought any further medical treatment until August 5, 2015, when he was seen in the emergency room at Chabert.[26]  He complained of leg pain, chronic pain in his left foot where plantar's warts had been removed, chronic pain in his groin from the past surgery for necrotizing fasciitis, and chronic lower back pain radiating into both legs and feet. He was out of his diabetes medications.  The diagnoses assigned were medication refill, medical noncompliance, chronic pain, and diabetic polyneuropathy associated with Type I diabetes.  He was given a painkiller while in the emergency room, and

---

[24]     Rec. Doc. 6-1 at 527-601.

[25]     Rec. Doc. 6-1 at 602-603.

[26]     Rec. Doc. 6-1 at 605-612.

he was discharged with prescriptions for Gabapentin and Insulin glargine for his diabetes and a Tramadol prescription for pain.

On November 4, 2015, the claimant testified at a hearing regarding his symptoms, medical treatment, and functionality. He stated that he was six feet tall and weighed about 310 pounds, having lost approximately thirty pounds after being released from the nursing home. He was living with his brother, who paid the water and electricity bills, and his niece was providing his meals. He complained about the mother of his children having forced him out of their home and refusing to permit him to visit with their children. He claimed that she took his income tax refund, and he had to sell his truck, trailer, and boat, which prevented him from being able to earn a living by crawfishing. He stated that he could no longer drive because he could not feel his legs or feet, further stating that he lost toenails without feeling it. He also stated that plantar's warts left him with painful, bleeding holes in his feet. He testified that he can read well but has difficulty with writing and spelling and can barely use a cell phone. He claimed to be deaf in one ear. When asked about his functionality, the claimant testified that he can stand for only about five minutes, walk for only about 100 to 150 feet, and can sit for about an hour before having to lie down. He testified that his wound healed up but left him with painful erections. The claimant testified that he cannot afford doctor's visits or medication. He said that he

has no income, and three weeks before the hearing was eating dog food because he had no food and no money. He claimed that he was told he was a walking stroke or heart attack. He testified that he saw Dr. Kidd, an eye doctor in Morgan City, Louisiana, but there are no records from Dr. Kidd in the record.

On February 3, 2016, the claimant was seen at Teche Action Clinic in Houma, Louisiana[27] for a follow-up visit for multiple medical problems. He was out of all of his medications, and indicated that he had been out for more than two months because he could not afford them. He complained of joint pain, low back pain, shortness of breath, dizziness with hyperglycemia, numbness in both hands and left leg, and holes in his feet. He also complained of pain in his chest, back, and feet that he rated at nine out of ten. He requested an evaluation for Social Security disability. He reported that his last visit had been to the clinic in Franklin, Louisiana on July 23, 2015. It was noted that he was six feet tall and weighed 307 pounds. He had a history of noncompliance, and his hygiene was poor. He had diminished soft touch bilaterally on the lower extremities and abnormal sensations in both feet. Levemir, Humalog, Diclofenac, Gabapentin, and Baclofen were prescribed, and he was advised to improve his medication compliance.

---

[27]     Rec. Doc. 6-1 at 626-632.

The claimant returned to the Teche clinic on March 9, 2016,[28] reporting continued diffuse pain and again indicating that his medication compliance was erratic. Bilateral plantar callous formation was noted along with diminished soft touch bilaterally in the lower extremities and abnormal sensation in both feet. His medications were continued.

On June 29, 2016, the claimant was seen by Dr. William A. Cefalu in the emergency room of the Teche Regional Medical Center in Morgan City, Louisiana.[29] His chief complaint was suicidal ideation due to an inability to take care of himself, chronic back pain, diabetes, and hypertension. He appeared depressed. It was noted that he had a total knee replacement scar. He refused to stand for the doctor and also refused to participate in any cerebellar examination. The plan was to have him admitted to an inpatient psychiatric unit for further evaluation and treatment.

Dr. Victor Gonzalez performed a psychiatric evaluation the same day.[30] The claimant stated that he was depressed because he was getting weaker and unable to take care of himself. He indicated that he had not been performing activities of daily living due to lack of finances and indifference. He gave a history of bacterial

---

[28]     Rec. Doc. 6-1 at 620-625.

[29]     Rec. Doc. 6-1 at 633-634.

[30]     Rec. Doc. 6-1 at 635-636.

infection and skin graft, hypertension, diabetes, and arthritis. He also stated that he was having hallucinations suggesting that he kill himself. He claimed prior outpatient treatment for depression but could not recall where. He was taking no psychiatric medications and using a wheelchair. Dr. Gonzalez noted that the claimant was unkempt but not delusional; his judgment and insight were impaired; his impulse control was poor; but he was fully oriented. His capacity for harm was severe as he was suicidal. Dr. Gonzalez noted deficits in his recent memory, ability to concentrate, ability to abstract, personal hygiene, and in his capacity for activities of daily living. He was started on Remeron for depression and Zyprexa or Risperdal for hallucinations or irritability, his diabetes medications were restarted, and he was admitted for approximately one week of inpatient treatment.

The next day, June 30, 2016,[31] the claimant continued to be suicidal and also complained about right knee pain and back pain. He was indifferent to hygiene and activities of daily living, disruptive, and irritable. He was coherent but depressed and no longer having hallucinations.

The claimant now seeks reversal of the Commissioner's adverse decision.

---

[31]        Rec. Doc. 6-1 at 637-641.

## ANALYSIS

### A.   STANDARD OF REVIEW

Judicial review of the Commissioner's denial of disability benefits is limited to determining whether substantial evidence supports the decision and whether the proper legal standards were used in evaluating the evidence.[32] "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[33] Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will only be found when there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[34]

If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed.[35] In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner.[36] Conflicts in the

---

[32]    *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

[33]    *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).

[34]    *Hames v. Heckler*, 707 F.2d at 164 (citations omitted).

[35]    42 U.S.C. § 405(g); *Martinez v. Chater*, 64 F.3d at 173.

[36]    *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Villa v. Sullivan*, 895 F.2d at 1022.

evidence[37] and credibility assessments[38] are for the Commissioner to resolve, not the courts. Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience.[39]

**B.** **ENTITLEMENT TO BENEFITS**

The Disability Insurance Benefit ("DIB") program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence.[40] Every individual who meets certain income and resource requirements, has filed an application for benefits, and is determined to be disabled is eligible to receive Supplemental Security Income ("SSI") benefits.[41]

---

[37]    *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985).

[38]    *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991).

[39]    *Wren v. Sullivan*, 925 F.2d at 126.

[40]    See 42 U.S.C. § 423(a).

[41]    42 U.S.C. § 1382(a)(1) & (2).

A person is disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[42]  A claimant is disabled only if his physical or mental impairment or impairments are so severe that he is unable to not only do his previous work, but cannot, considering his age, education, and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work.[43]

## C.    EVALUATION PROCESS AND BURDEN OF PROOF

The Commissioner uses a sequential five-step inquiry to determine whether a claimant is disabled.  This process requires the ALJ to determine whether the claimant (1) is currently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) is able to do the kind of work he did in the past; and (5) can perform any other work.[44]

---

[42]      42 U.S.C. § 1382c(a)(3)(A).

[43]      42 U.S.C. § 1382c(a)(3)(B).

[44]      20 C.F.R. § 404.1520.

"A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis."[45]

Before going from step three to step four, the Commissioner assesses the claimant's residual functional capacity[46] by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the record.[47]  The claimant's residual functional capacity is used at the fourth step to determine if he can still do his past relevant work and at the fifth step to determine whether he can adjust to any other type of work.[48]

The claimant bears the burden of proof on the first four steps; at the fifth step, however, the Commissioner bears the burden of showing that the claimant can perform other substantial work in the national economy.[49]  This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence.[50]  If the Commissioner

---

[45]    *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), cert. den. 914 U.S. 1120 (1995) (quoting *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987)).

[46]    20 C.F.R. § 404.1520(a)(4).

[47]    20 C.F.R. § 404.1545(a)(1).

[48]    20 C.F.R. § 404.1520(e).

[49]    *Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016); *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994).

[50]    *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding.[51]

## D.   THE ALJ'S FINDINGS AND CONCLUSIONS

In this case, the ALJ determined, at step one, that the claimant has not engaged in substantial gainful activity since December 31, 2013, the alleged disability onset date.[52] This finding is supported by substantial evidence in the record.

At step two, the ALJ found that the claimant has the following severe impairments: diabetes mellitus and obesity.[53] This finding is supported by substantial evidence in the record.

At step three, the ALJ found that the claimant has no impairment or combination of impairments that meets or medically equals the severity of a listed impairment.[54] The claimant challenges this finding.

The ALJ found that the claimant has the residual functional capacity to perform the full range of light work.[55] The claimant challenges this finding.

---

[51]   *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Fraga v. Bowen*, 810 F.2d at 1302.

[52]   Rec. Doc. 6-1 at 26.

[53]   Rec. Doc. 6-1 at 26.

[54]   Rec. Doc. 6-1 at 27.

[55]   Rec. Doc. 6-1 at 27.

At step four, the ALJ found that the claimant is not capable of performing any past relevant work.[56] The claimant does not challenge this finding.

At step five, the ALJ found that the claimant was not disabled from December 31, 2013 (the alleged disability onset date) through December 29, 2015 (the date of the ruling) because there are jobs in the national economy that he can perform.[57] The claimant challenges this finding.

### E.     THE ALLEGATIONS OF ERROR

The claimant contends that the ALJ erred (1) in failing to find that his impairments, singly or in combination, did not meet or medically equal a listed impairment; (2) in failing to consider the effects of his obesity in combination with his other impairment; and (3) in finding that he has the residual functional capacity to perform the full range of light work.

### F.     THE ALJ ERRED IN EVALUATING WHETHER THE CLAIMANT'S IMPAIRMENTS MEET OR EQUAL A LISTING

The ALJ reached his conclusion that the claimant's impairments do not meet or equal a listing without identifying the listings he considered and without any comparison of the claimant's symptoms or clinical findings with the criteria of any

---

[56]     Rec. Doc. 6-1 at 29.

[57]     Rec. Doc. 6-1 at 30-31.

relevant listing.  Although the claimant has the burden of proof at step three of the requisite analysis, an "ALJ is required to discuss the evidence and explain the basis for his findings at each unfavorable step of the sequential evaluation process."[58]

In *Audler v. Astrue*, the ALJ concluded that the medical evidence in the record indicated that the claimant had impairments that were severe but not severe enough to meet or medically equal a listed impairment.  The Fifth Circuit Court of Appeals noted that "[t]he ALJ did not identify the listed impairment for which Audler's symptoms fail to qualify, nor did she provide any explanation as to how she reached the conclusion that Audler's symptoms are insufficiently severe to meet any listed impairment."[59]  The Fifth Circuit concluded that "[s]uch a bare conclusion is beyond meaningful judicial review."[60]  The court then went on to explain that:

> By the explicit terms of the statute [42 U.S.C. § 405(b)(1)], the ALJ was
> required to discuss the evidence offered in support of Audler's claim for
> disability and to explain why she found Audler not to be disabled at that
> step.  Although the ALJ is not always required to do an exhaustive
> point-by-point discussion, in this case, the ALJ offered nothing to
> support her conclusion at this step and because she did not, "we, as a

---

[58]     *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007); 42 U.S.C. § 405(b)(1).

[59]     *Audler v. Astrue*, 501 F.3d at 448.

[60]     *Audler v. Astrue,* 501 F.3d at 448 (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996)).

reviewing court, simply cannot tell whether her decision is based on substantial evidence or not."[61]

In this case, the ALJ failed to follow the Fifth Circuit's guidelines in evaluating the claimant's impairments, summarily stating that "[t]he claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. . . ."[62]  In accordance with the Fifth Circuit's reasoning, the Commissioner's step three determination in this case was not reached through the application of proper legal standards, and this Court is unable to determine whether the Commissioner's conclusion at step three is or is not based on substantial evidence in the record.

This error alone, however, does not require reversal of the Commissioner's decision.  If an error is found to exist, a court must then determine if the error is harmless.[63]  An error is harmless when there is no likelihood that the ALJ would have reached a different conclusion absent the error,[64] while an error is not harmless if the substantial rights of the parties have been violated.[65]  Here, had the ALJ considered

[61]    *Audler v. Astrue*, 501 F.3d at 448 (quoting *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986)).

[62]    Rec. Doc. 6-1 at 27.

[63]    See *Audler v. Astrue*, 501 F.3d at 448.

[64]    See *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003).

[65]    See *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988).

the claimant's diabetes, diabetic neuropathy, hypertension, obesity, heart disease, or spondylolysis when considering applicable listings, such as the listings for musculoskeletal disorders, neurological disorders, and endocrine disorders cited in the claimant's briefing, there is a possibility that the ALJ could have found that the claimant's impairments meet or medically equal a listing. Therefore, the ALJ's error at step three of the disability analysis violated the claimant's substantial rights, and remand is required.[66] This Court accordingly recommends that this matter be remanded for a thorough analysis of whether the claimant has an impairment or combination of impairments that meets or medically equals a listed impairment.

## G. THE CLAIMANT'S OTHER ASSIGNMENTS OF ERROR

The claimant also contends that the ALJ erred in failing to consider the effects of his obesity in combination with his other impairments and in finding that the claimant has the residual functional capacity to perform the full range of light work. Until it is known whether the claimant has an impairment or combination of

---

[66]  See, e.g., *Foreman v. Colvin*, No. H-15-1961, 2016 WL 4183223, at *13 (S.D. Tex., July 10, 2016), report and recommendation adopted, 2016 WL 4159839 (S.D. Tex. Aug. 5, 2016); *Reyna v. Colvin*, No. 5:14-CV-147-C, 2015 WL 1515251, at *4 (N.D. Tex. Apr. 1, 2015); *Marsh v. Comm'r of Soc. Sec. Admin.*, No. 4:13CV312, 2015 WL 1288656, at *3 (E.D. Tex. Mar. 20, 2015) *Watson v. Colvin*, No. 3:13-CV-583-BF, 2014 WL 1281473, at *4 (N.D. Tex. Mar. 31, 2014); *Joseph v. Astrue*, No. 6:10-CV-01315, 2012 WL 601477, at *6 n. 74 (W.D. La. Jan. 24, 2012) report and recommendation adopted, No. 6:10-CV-01315, 2012 WL 601586 (W.D. La. Feb. 22, 2012); *Robertson v. Astrue*, No. 3-10-CV-1669-BD, 2011 WL 3836915, at *4 (N.D. Tex. Aug. 26, 2011); *Lynch v. Astrue*, No. 7–10–CV–0032–BD, 2011 WL 1542056 at *3–4 (N.D.Tex. Apr.22, 2011).

impairments that meets or medically equals a listed impairment, this Court is unable to evaluate whether the ALJ erred in analyzing the claimant's obesity or his residual functional capacity. Therefore, this Court pretermits discussion of those allegations of error pending further evaluation of the claimant's impairments in comparison to the listing criteria.

## CONCLUSION AND RECOMMENDATION

For the foregoing reasons, this Court recommends that the Commissioner's decision be REVERSED and REMANDED to the Commissioner for further administrative proceedings, pursuant to the fourth sentence of 42 U.S.C. § 405(g), with instructions to (1) determine whether any of the claimant's impairments, singly or in combination, meet or medically equal a listed impairment, including evaluation of the claimant's obesity in the determinative process, and (2) determine the claimant's residual functional capacity. The Commissioner should develop the record by obtaining treatment notes and other relevant documentation from the health care professionals who have provided services to the claimant since the alleged disability onset date, and the claimant should be afforded an opportunity to supplement the record with updated medical records and to testify at another hearing. Inasmuch as the reversal and remand recommended herein falls under sentence four of Section

405(g), any judgment entered in connection herewith will be a "final judgment" for purposes of the Equal Access to Justice Act (EAJA).[67]

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.[68]

---

[67] See, *Richard v. Sullivan*, 955 F.2d 354 (5th Cir. 1992), and *Shalala v. Schaefer*, 509 U.S. 292 (1993).

[68] See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed at Lafayette, Louisiana, this 24th day of May 2017.

_____

PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE